UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANNY R. GARCIA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>DR. KALISHER, et al.,<br><br>　　　　Defendants. | Case No. 15-cv-00045-JD<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 21 |

Danny Garcia is a state prisoner proceeding pro se in this civil rights action under 42 U.S.C. § 1983. Garcia alleges that defendants were deliberately indifferent to his serious medical needs by failing to properly diagnose a lump on his thigh as cancerous, failing to properly treat the cancer, and not properly treating him for a head wound suffered in a fight. Defendants Dr. Kalisher, Nurse Mandich, and Nurse Gerkey have moved for summary judgment. Garcia filed an opposition, defendants filed a reply. The motion is granted.

**BACKGROUND**

This action proceeds on the amended complaint. Docket No. 6. Garcia alleges that Kalisher did not properly diagnose and treat his condition as cancer on the initial examination; she did not properly treat an infection on Garcia's abdomen from his daily injections of anticoagulant medications; she did not properly maintain Garcia's porta-catheter that was implanted by his oncologist; and she did not timely remove from Garcia's head medical staples that were put into place after an altercation with another prisoner.

Garcia alleges that Mandich told him the lump on his thigh was a hernia and that he did not need to see a doctor, and on another date, Mandich refused to administer an injection because

another nurse was treating Garcia.

Garcia alleges that Gerkey would not have Garcia transported to the hospital on an unspecified date, and on another day, when Gerkey was administering an injection, Gerkey applied an alcohol swab with too much force and would not allow another nurse to provide the injection.

The facts for this motion are largely undisputed. Garcia was incarcerated at Correctional Training Facility ("CTF") during the relevant time. Am. Compl. at 2. Kalisher is a physician and surgeon and is a primary care provider at CTF. Motion for Summary Judgment ("MSJ"), Kalisher Decl. ¶ 1. Mandich is a registered nurse at CTF. Mandich Decl. ¶ 1. Gerkey is a registered nurse formerly at CTF. Gerkey Decl. ¶ 1.

**Dr. Kalisher**

Kalisher first became aware of Garcia's thigh pain on February 4, 2014, during an examination. Kalisher Decl. ¶ 6. Garcia presented with a four-month history of right groin swelling and pain. *Id*. He was being treated with Naproxen and Tylenol. He stated that he had a mass that was enlarging. *Id*. His urination and bowel movements were regular and fine, but his right groin hurt if he strained or squeezed. *Id*. Kalisher noted that the mass did not feel like a node because it had no distinct margins, and it did not appear to be a hernia. *Id*. Garcia's rectal and genitourinary exam was negative. *Id*. Kalisher requested an Ultrasound of Garcia's right groin. *Id*. An Ultrasound was performed on February 24, 2014. *Id*. ¶ 7.

Kalisher next saw Garcia on March 19, 2014, and reviewed the Ultrasound report, which indicated a right groin mass approximately two to three inches and suggestive of a hematoma, while a soft tissue mass was less likely. *Id*. Kalisher noted there did not appear to be any prior trauma. *Id*. Garcia's lab work revealed that his erythrocyte sedimentation rate (ESR) was elevated at 38, with mild anemia H/H (hemoglobin and hematocrit) and elevated platelets at 427,000. *Id*. This indicated a slight abnormality with the blood test. *Id*. Kalisher requested an MRI, which was approved on March 27, 2014. *Id*. ¶¶ 7, 8.

On April 12, 2014, Garcia was taken to Twin Cities Community Hospital for a right pelvic mass CT-guided biopsy. *Id*. ¶ 10. A report issued on April 14, 2014, revealed that the findings

2

were suspicious for neoplasm (abnormal tissue growth) such as sarcoma. *Id*. ¶ 11.

On May 2, 2014, Garcia was admitted to Salinas Valley Memorial Hospital ("SVMH") for curative-intent chemotherapy. *Id*. ¶ 12. A CT of his abdomen and pelvis showed multiple adjacent enlarged right inguinal lymph nodes. *Id*. An MRI of his pelvis showed that the neoplasm was suspicious for sarcoma. *Id*. His assessment was diffuse large B-cell lymphoma. *Id*. Garcia did not demonstrate any "B" symptoms and it appeared that he was at the early stage of the disease. *Id*.

Garcia was discharged on May 5, 2014, and returned to CTF. *Id*. ¶ 13. A discharge report from SVMH noted that Garcia tolerated his chemotherapy well, and his lower extremity pain and swelling improved after the start of chemotherapy. *Id*. A bone marrow biopsy revealed no involvement of his lymphoma. *Id*. Garcia was scheduled for follow-up care at Natividad Medical Center Specialty Clinic ("NMCSC") on May 16, 2014, and chemotherapy would continue every three weeks at SVMH. *Id*. He would continue taking the anticoagulant medication. *Id*. ¶ 14.

Kalisher saw Garcia next on June 4, 2014, for a complaint of a swollen red bump on his right abdomen. *Id*. ¶ 15. Kalisher noted that Garcia's last chemotherapy session was on May 31, 2014. *Id*. Kalisher believed the lump on the abdomen was an abscess from anticoagulant medication injections. *Id*. Kalisher started Garcia on antibiotics twice a day and referred him for a follow-up in six to seven days. *Id*. Garcia returned from his oncology follow-up care and met with Kalisher on July 11, 2014. *Id*. ¶ 17. He stated that he had no concerns about his treatment. *Id*.

Garcia requested treatment on August 12, 2014, for a recurrent infection on his abdomen due to the injections. *Id*. ¶ 18. Kalisher examined him and found bruising but no signs of infection. *Id*. She treated him again on August 20, 2014, and noted that Garcia had completed his chemotherapy treatment two days earlier. *Id*. Kalisher started him on Neupogen, an adjuvant medication to maintain white blood cell count during chemotherapy. *Id*. Kalisher also observed that the swollen area on Garcia's abdomen was getting smaller and less tender. *Id*. ¶ 19.

Kalisher examined Garcia on December 9, 2014, following the completion of his radiation therapy at SVMH. *Id*. ¶ 20. The pathology from his colonoscopy was negative. *Id*. Kalisher

3

noted that it was time to remove Garcia's porta-catheter because he no longer needed an access line for chemotherapy, and removal was recommended by his oncologist. *Id*. The porta-catheter was being maintained by nursing staff by being flushed every last Monday of the month. *Id*. Plaintiff did not say anything to Kalisher about any maintenance issues with the porta-catheter. *Id*. Kalisher submitted a request for the porta-catheter to be removed. *Id*. The porta-catheter was removed on February 27, 2015, at Twin Cities Community Hospital without any complications. *Id*. ¶ 22.

Kalisher examined Garcia on April 2, 2015, and he presented with no complaints regarding the removal of the porta-catheter. *Id*. ¶ 23. The incision had healed well, and there was no drainage, redness, or tenderness. *Id*. On June 2, 2015, Garcia had medical staples removed from his right upper forehead. *Id*. The staples had been applied after he had been in a fight a few months earlier. *Id*. The removal of the staples was performed by a nurse, and Kalisher reviewed and approved the removal. *Id*. The staples were removed with no complications. *Id*. ¶ 24.

**Nurse Mandich**

On June 7, 2014, Garcia arrived at the CTF medical unit to receive his daily anticoagulant injection as part of his cancer treatment. Mandich Decl. ¶ 7. Mandich did not administer the injection because Nurse Gerkey was to provide the injection. *Id*. Garcia wanted Mandich to administer the injection, but Mandich informed Garcia that she was unavailable, that Gerkey was to administer the injection, and that Garcia could not pick which nurse was to provide his treatment. *Id*. Plaintiff refused the injection. *Id*. Garcia disputes this version of the incident. Garcia states that he never refused the injection; he only wanted someone else to administer the injection. Opposition at 5. Garcia states that Mandich was not with another inmate. *Id*.

On July 9, 2014, Garcia arrived at the medical unit to receive an enoxaparin injection. Mandich Decl. ¶ 8. He wanted to administer the injection himself. Mandich informed Garcia that a subcutaneous enoxaparin injection had to be administered by health care staff. *Id*. Plaintiff refused the injection. *Id*.

On December 1, 2014, Mandich provided Garcia a nursing assessment after his return from a scheduled chemotherapy session. *Id*. ¶ 9. There were no issues, and Garcia returned to his cell.

4

*Id.*

On March 29, 2015, Mandich treated Garcia for a head wound sustained in a fight. *Id.* ¶ 11. The on-duty doctor treated the wound with medical staples. *Id.* Mandich noted that the wound was cleaned and irrigated, the staples were placed, and an antibiotic ointment was applied. *Id.* All the treatment was provided without complication and Garcia returned to his cell. *Id.*

**Nurse Gerkey**

On June 7, 2014, as stated above, Garcia arrived at the medical unit for his anticoagulant injection. Gerkey Decl. ¶ 8. The injection is administered in the abdominal area with the patient in a supine position on a gurney to prevent accidental falls. Gerkey was to administer the injection. *Id.*

Gerkey states that Garcia did not want to lie down for the injection. *Id.* Gerkey informed Garcia that if he did not cooperate he would not receive the injection and Gerkey would complete a refusal of treatment form. *Id.* Plaintiff refused to cooperate, and Gerkey informed him that by refusing the injection there was a risk of blood clot, stroke, or even death. *Id.*

Garcia disputes this version of the incident. Garcia states that he never refused the injection; he only wanted someone else to administer the injection. Opposition at 5.

Gerkey interacted with Garcia on one other occasion prior to June 7, 2014. Gerkey Decl. ¶ 9. Garcia walked into the medical unit and demanded to go to the hospital due to the lump on his thigh. *Id.* Gerkey conducted a visual assessment and observed that the lump was not a medical emergency. Garcia again demanded to go the hospital and stated he would go "man down." *Id.* Gerkey told Garcia that if he went "man down" for a nonemergency condition, the behavior would be documented as a rules violation. Garcia then left the medical unit. *Id.* Neither party has stated the date this occurred.

## DISCUSSION

Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is

genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *See id.*

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  *Id*.  The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *See id*. at 324 (citing Fed. R. Civ. P. 56(e) (amended 2010)).

For purposes of summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party.  *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact.  *See T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds, WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *Id.* at 1059.

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.*  The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or

6

treatment, the presence of a medical condition that significantly affects an individual's daily activities, or the existence of chronic and substantial pain are examples of indications that a prisoner has a serious need for medical treatment. *Id.* at 1059-60.

A prison official is deliberately indifferent if he or she knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." *Id.* If a prison official should have been aware of the risk, but did not actually know, the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002). "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). In addition "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference. . . . [Prisoner] would have . . . no claim for deliberate medical indifference unless the denial was harmful." *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

Viewing the evidence in the light most favorable to Garcia, all defendants are entitled to summary judgment. Garcia does not refute the majority of defendants' factual assertions. He states that defendants' facts are not accurate, but provides no evidence to support this statement other than saying he set forth his facts and arguments in the amended complaint. Even after reviewing the amended complaint and Garcia's assertions, he has not shown that defendants were deliberately indifferent to his serious medical needs.

It is undisputed that Dr. Kalisher first examined Garcia on February 4, 2014, and ordered an Ultrasound. When the Ultrasound results were ready, Kalisher reviewed his blood work and ordered an MRI. Garcia was then taken to Twin Cities Hospital and later to Salinas Valley Memorial Hospital for a biopsy and chemotherapy, all within a few months of Kalisher's first examination of Garcia. Garcia fails to show that Kalisher was deliberately indifferent. She provided him with a great deal of medical care beginning from her first examination. Garcia argues that his medical condition could have been avoided if Kalisher had provided better care.

7

He provides no evidence to support this assertion and has failed to identify specific facts showing that there is a genuine issue for trial. Garcia cannot meet the high standard for his claim of deliberate indifference regarding the cancer diagnosis. His difference of opinion regarding the treatment is insufficient. *Franklin*, 662 F.2d at 1344.

Kalisher is also entitled to summary judgment for Garcia's claims that she was deliberately indifferent in treating his abdominal infection, not properly maintaining the porta-catheter, and not timely removing the head staples. When Garcia reported a swollen red bump on his abdomen on June 4, 2014, Kalisher started him on antibiotics twice a day. Garcia did not report any concerns about his treatment when he saw Kalisher on July 11, 2014, and on August 12, 2014, when he returned to the medical unit for treatment, Kalisher saw no sign of infection. By August 20, 2014, the swollen area on Garcia's abdomen was getting smaller and less tender.

Garcia alleges that Kalisher failed to properly maintain the porta-catheter. Other than presenting this conclusory allegation he presents no evidence or even allegations that there were any complications from the porta-catheter. The porta-catheter was maintained by CTF nursing staff and was removed at Twin Cities Community Hospital on February 27, 2015. On April 2, 2015, Kalisher noted that Garcia had no complaints about the porta-catheter or its removal, the incision had healed well, and there was no drainage, redness, or tenderness. There was no serious medical need related to the porta-catheter and no deliberate indifference on behalf of Kalisher.

Kalisher is also entitled to summary judgment on the claim that she violated the Eighth Amendment with respect to the removal of the staples from Garcia's head. It is undisputed that another doctor applied the staples after Garcia had been in a fight with another inmate. Kalisher's only involvement with the medical staples was overseeing their removal on June 2, 2015. Garcia argues that she waited too long to have them removed and that he was therefore at risk for infection. He makes no allegations that the staples caused any infection or that even if there was a delay in removing the staples it was due to Kalisher. In addition, mere delay of treatment without more is insufficient to demonstrate deliberate medical indifference. *See Shapley*, 766 F.2d at 407. Garcia's conclusory allegations with no support are insufficient to defeat summary judgment. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("Conclusory, speculative

testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.")

Summary judgment is also granted to nurses Mandich and Gerkey. Garcia only presents general allegations that Mandich failed to diagnose the cancer, and general allegations are insufficient at the summary judgment stage. *See Soremekun*, 509 F.3d at 984. It is undisputed that Kalisher diagnosed the cancer, which was in an early stage, and then quickly proceeded to provide treatment. He makes no allegations that the radiation and chemotherapy were unsuccessful and that if they were it was due to any delay in treatment caused by Mandich's failure to diagnose. Nor has Garcia demonstrated a genuine issue for trial when Mandich did not administer an injection because Nurse Gerkey was there to provide the injection. Mandich was not denying lifesaving medication, as Garcia argues, because another nurse was available and prepared to provide the injection. Even if Mandich was rude to Garcia, that does not present a constitutional violation. Summary judgment is also granted to Mandich with respect to the claim that she refused to allow Garcia to administer the injection to himself on a different occasion.

Gerkey is entitled to summary judgment regarding Garcia's claim that he wanted another nurse to provide an injection. Garcia has not met his burden in showing that there is a genuine issue for trial. In the amended complaint Garcia also states that he tried for four to five months to see a doctor before seeing Kalisher. He describes an incident when he went to the medical unit to seek treatment because his leg had swelled, but Gerkey told him it was not serious and that he would not be sent to the hospital. Am. Compl. at 6. Garcia does not state when this occurred, but he also states that he was eventually examined by a different nurse and then sent to the hospital for an Ultrasound and an MRI. *Id*. It would appear this incident happened shortly before February or March 2014. It is undisputed that Garcia received comprehensive treatment for the cancer once it was discovered. Garcia has not presented sufficient evidence or allegations that Gerkey's failure to recognize the severity of Garcia's medical problem on one occasion arises to deliberate indifference. It is undisputed that Garcia arrived at the clinic with swelling. Gerkey, a nurse, was not deliberately indifferent for not knowing that the swelling was caused by cancer, especially when soon after Garcia received a cancer diagnosis followed by comprehensive cancer treatment.

Garcia's conclusory allegations of delayed diagnosis and treatment are insufficient to show deliberate indifference. See *Shapley* at 407; *Soremekun* at 984.

## CONCLUSION

1. Defendants' motion for summary judgment (Docket No. 21) is **GRANTED**.

2. The Clerk shall terminate all pending motions, enter judgment, and close the file.

**IT IS SO ORDERED.**

Dated: April 7, 2016

_____
JAMES DONATO
United States District Judge

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DANNY R. GARCIA,

        Plaintiff,

   v.

DR. KALISHER, et al.,

        Defendants.

Case No. 15-cv-00045-JD

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on April 7, 2016, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Danny R. Garcia ID: V-30568
California Training Facility North Rainier "A" 112 low
P.O. Box 705
Soledad, CA 93960

Dated: April 7, 2016

                  Susan Y. Soong
                  Clerk, United States District Court

                  By: *Lisa R. Clark*
                  LISA R. CLARK, Deputy Clerk to the
                  Honorable JAMES DONATO